John Burton, State Bar No. 86029
jb@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California 91103
Tel.: (626) 449-8300/Fax (626) 440-5968

Attorneys for Plaintiffs Hasmik Jasmine Chinaryan,
Individually and as Guardian as Litem for NEC, a Minor,
and Mariana Manukyan,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASMIK JASMINE CHINARYAN, Individually and as Guardian as Litem for NEC, a Minor, and MARIANA MANUKYAN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES,<br><br>Defendant. | Case No. 2:19-cv-09302 MCS (Ex)<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW (C.D. CAL. R. 16-4.1)**<br><br>Before Judge Mark C. Scarsi<br><br>**Pretrial Conference:**<br><br>Date: August 9, 2021<br>Time: 2:00 p.m.<br><br>**Trial:**<br><br>Date: August 23, 2021<br>Time: 8:30 a.m. |

**Introduction**

This 42 U.S.C. § 1983 action for damages arises from an aggressive Los Angeles Police Department (LAPD) *Terry* detention of the three Plaintiffs, two women and a teenage girl, who were ordered out of their car at gunpoint. One was made to lie prone in the street. All three were handcuffed. The officers discovered that the DMV made an error on a license plate and released Plaintiffs.

Both sides moved for summary judgment. The Court granted the individual defendants qualified immunity, Docket No. 77 at 13-16, leaving Plaintiffs' *Monell* claims against the City of Los Angeles. The Court found that LAPD policy was the "moving force," *id.* at 19, and denied summary judgment on whether the high-risk tactics used during the traffic stop under the circumstances known to the the officers violated Plaintiffs' Fourth-Amendment rights, leaving that issue for the jury. *Id.* at 13.[1]

## Contentions of Fact

June 16, 2019, was Father's Day. Levon Chinaryan is a professional driver, who owns a black 2018 Chevrolet Suburban limousine. Due to an unnoticed DMV error, the license plate had a digit wrong. That evening, he drove his family, including his wife, Plaintiff Jasmine Chinaryan, and their fifteen-year-old daughter Plaintiff NEC, to a get-together. Ms. Chinaryan left in the Suburban before dinner to take NEC home because she felt ill. Plaintiff Mariana Manukyan, a family friend, rode along for companionship.

The limousine coincidentally matched the general description of a black Suburban limousine reported stolen in that area two days before. The stolen Suburban was equipped with a "LoJack" that emitted radio signals when activated. The night before this incident, LAPD officers tracked the LoJack signal to a nearby area known for auto repair and body shops, some of which may be "chop shops." The shops were closed for the weekend, so the officers returned later and recovered the car.

Before the car was recovered, Sergeant Fred Cueto ran the Chinaryan's license plate, which came back to a pickup truck that had not been reported stolen. He followed and called for back up and a helicopter. The LoJack receiver in a patrol unit gave no indication that the Suburban they were following was the one reported stolen two days before. Shortly after 8:00 p.m., patrol officers activated their lights and sirens on Foothill Boulevard near Woodward Avenue in Sunland-Tujunga. Ms. Chinaryan immediately pulled over.

---

[1]The Court dismissed the Bane Act Claim, leaving only § 1983 for trial.

Multiple LAPD officers arrived either shortly before or after the traffic stop, 13 total. At least four pointed pistols at Plaintiffs. One pointed an assault rifle and another a shotgun. Ms. Chinaryan was ordered to turn off the car, throw her keys out the window, and exit from the driver's door into Foothill Boulevard. Officers instructed her to turn away, side step to the middle of the number two traffic lane, go to her knees, lie prone on the street, put her limbs spread eagle, turn her head to the left away from the Suburban, which resulted in her right cheek on the street. She was left in that position for three minutes and twenty five seconds while her daughter and friend were ordered out of the passenger side and handcuffed.

None of the Plaintiffs could be mistaken for a violent gang member or hardened criminal. Ms. Chinaryan was 37 and worked as an administrator for a program that assists children with developmental disabilities. She was wearing a well fitted blouse and pants. Her fifteen-year-old daughter was wearing a short black dress. Ms. Manukyan, a concert pianist and high-school music instructor, was wearing what she had worn earlier that day when performing at a church service, a well-fitted black top and black pants. None of the outfits could have concealed a firearm.

The experience was so terrifying that NEC urinated and wailed hysterically. Officers told her to "stop crying" and "look straight." The officers testified that all three women were cooperative throughout.

Using the VIN, an officer quickly discovered the discrepancy on the license plate and announced "It's not stolen." The three Plaintiffs were not released from handcuffs until almost ten minutes after the DMV mistake was first discovered. The officers at the scene took no responsibility for their heavy-handed approach, rather than apologize they blamed the Chinaryans and the DMV.

The Plaintiffs suffered emotional distress and claim money damages.

**Contentions of Law**

The Court's Order on summary judgment has narrowed the issues significantly. Following the Rule 16 meeting and conference of counsel, the parties at present dispute: (1) the applicable standard for Plaintiffs' constitutional claim, and (2) whether Plaintiffs must establish that one or more specific LAPD officers violated their constitutional rights for *Monell* liability.

**1.  The Constitutional Standard**

When ruling on the cross-motions for summary judgment, the Court cited Ninth Circuit law establishing that "the use of especially intrusive means of effecting a stop," such as those used here, are constitutionally permissible:

> 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur.

Docket No. 77 at 9 (quoting *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996).

*Green v. City and Cty. of San Francisco*, 751 F.3d 1039, 1042-44 (9th Cir. 2014), applied *Washington v. Lambert* to a stop of a suspected stolen vehicle, the same circumstance presented here. The Ninth circuit added:

> [Plaintiff] was also considerably outnumbered, which counts against a finding that she posed a threat to the multiple officers at the scene. . . . [N]either party suggests that [plaintiff] ever actively resisted law enforcement; in fact, the record makes clear that [plaintiff] was compliant with the directions of law enforcement at all times. We have found excessive force under similar circumstances.

*Id.* at 1050 (citing *Hopkins v. Bonvicino*, 573 F.3d 752, 776 (9th Cir. 2009) (officer pointed weapon at a cooperative, unarmed, outnumbered suspect).

Plaintiffs will submit a corresponding special instruction.

## 2. There Is No Requirement of Individual Liability

The Court determined the officers are entitled to qualified immunity, and that the City's training and policy were the "moving force" behind the incident. The issue to be determined by the jury is whether under the circumstances presented that training and policy deprived Plaintiffs of their Fourth-Amendment right to be free from unreasonable searches and seizures.

Because Plaintiffs are pursuing a pure *Monell* claim, there is no requirement that one or more of the individual officers be found responsible for a Fourth-Amendment violation. Imposing such a burden on Plaintiffs would be inconsistent with the Summary Judgment Order. *Monell* cases generally do not require proof of individual liability. Constitutional deprivations may occur "not . . . as a result of actions of the individual officers, but as a result of the collective inaction" of the entity. *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) "If a plaintiff establishes he suffered a constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under § 1983." *Id.* at 917 & n.4. A "city might be held liable for improper training or improper procedure even if [the officer] is exonerated. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). The Ninth Circuit is explicit that *Monell* and individual liability exist independently.

> In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court recognized that the city could be held independently liable under § 1983 for failure to train its police officers even though no individual defendants were sued. This Court reached the same conclusion in *Oviatt v. Pearce*, 954 F.2d 1470, 1477-79 (9th Cir. 1992), deciding § 1983 liability could attach to a city because it failed to implement internal procedures for tracking inmate arraignments.

*Fairley*, 281 F.3d at 917; *accord Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1142-43 (9th Cir. 2012) (*Fairley* "made clear that the rule applies 'whether the officers are exonerated on the basis of qualified immunity, because they were merely negligent, or for other failure

of proof.'") The Ninth Circuit applied this rule in a recent jail hanging case, allowing *Monell* claims to continue against the entity after upholding qualified immunity for the individual defendants. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019). Other circuits follow the same rule. According to the Tenth Circuit:

> [S]ometimes the municipal policy devolves responsibility across multiple officers. In those situations, the policies may be unconstitutional precisely because they fail to ensure that any single officer is positioned to prevent the constitutional violation. Where the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the municipality may be directly liable. That is, the municipality may not escape liability by acting through twenty hands rather than two.

*Crowson v. Washington Cty.*, 983 F.3d 1191, 1166 (10th Cir. 2020) (citing *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 310 (10th Cir.1985)); *accord*, *Barnett v. MacArthur*, 956 F.3d 1291, 1301-02 (11th Cir. 2020) ("[M]unicipal liability can exist if a jury finds that a constitutional injury is due to a municipal policy, custom, or practice, but also finds that no officer is individually liable for the violation. . . . This is not a controversial concept, as many of our sister circuits have come to the same conclusion."); *Speer v. City of Wynne*, 276 F.3d 980, 985-86 (8th Cir. 2002) ("[S]ituations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation."); *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994) (en banc) ("[A]n underlying constitutional tort can still exist even if no individual police officer violated the Constitution."); *Barrett v. Orange Cty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ("We agree with our sister circuits that under *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability."); *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) ("[A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict.").

**(a)  Plaintiffs' Claim**

42 U.S.C. § 1983. Defendant City of Los Angeles deprived Plaintiffs` of their constitutional rights under the Fourth Amendment.

**(b)  The Elements Required to Prove Such Claim are:**

1. The officers acted under color of law.
2. The officers acted pursuant the defendant City of Los Angeles policy or widespread or longstanding practice or custom that was so closely related to the deprivation of a plaintiff's Fourth-Amendment rights as to be the moving force that caused the ultimate constitutional injury; and
3. Plaintiffs were deprived of Fourth-Amendment Rights.

*See* Ninth Circuit Model Civil Jury Instructions Nos. 9.1, 9.5, 9.12, 9.16, 9.17 9.20, 9.21, 9.22 and 9.25; *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996); *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1042-44 (9th Cir. 2014).

**(c)  In Brief, the Key Evidence Plaintiff Relies On:**

1. Defendant admits the officers acted under color of state law.
2. Body-worn video shows the deprivations of Plaintiffs' Fourth-Amendment rights as described in the above contentions of fact.
3. The officers admit 1) Plaintiffs were cooperative and took no action that raised a reasonable possibility of danger or flight; 2) The officers had no information that any Plaintiff was armed; 3) The stop did not closely follow a violent crime; and 4) the officers had no information that a crime that may involve violence was about to occur.
4. The Court has adjudicated that City policy was the moving force in the foregoing constitutional violations.

**(d)  Defendants' Counterclaims and Affirmative Defenses:**

The Court has adjudicated that the individual defendants have qualified immunity. There are no other counterclaims or affirmative defenses.

**(e)** **The Elements Required to Establish Defendants' Affirmative Defenses:**

Not applicable

**(f)** **ANTICIPATED EVIDENTIARY ISSUES:**

Plaintiffs do not foresee any unusual evidentiary issues. An important witness, Sgt. Fred Cueto, passed away unexpectedly after his deposition. There is no video, only a written transcript. The parties will identify relevant excerpts, attempt to resolve all objections, and then read the testimony.

**(g)** **ISSUES OF LAW:**

At this stage, the parties dispute: (1) the applicable standard for Plaintiffs' constitutional claim, and (2) whether Plaintiffs must establish that one or more specific LAPD officers violated their constitutional rights for *Monell* liability. Plaintiffs address these two issues in their contentions of law set forth above.

**(h)** **BIFURCATION**

There are no issues to bifurcate.

**(i)** **JURY TRIAL**

All issues are triable to a jury as of right, and all parties have timely demanded a jury trial.

**(J)** **ATTORNEY'S FEES**

Plaintiffs will seek attorneys' fees pursuant to 42 U.S.C. § 1988 if they prevail.

**(k)** **ABANDONMENT OF ISSUES**

Plaintiffs have abandoned no claims, but the Court dismissed all claims against the individual officers and Plaintiffs' Cal. Civ. Code § 52.1 Bane Act claim on summary judgment. The only claim remaining is Plaintiffs' *Monell* claim.

Respectfully submitted,

Dated: July 14, 2021            THE LAW OFFICES OF JOHN BURTON

By:   /S/ John Burton
      _____
      John Burton
      Attorneys for Plaintiff