**MICHAEL N. FEUER**, City Attorney (SBN 111529x)
**KATHLEEN A. KENEALY**, Chief Deputy City Attorney (SBN 212289)
**SCOTT MARCUS**, Senior Assistant City Attorney (SBN 184980)
**CORY M. BRENTE**, Senior Assistant City Attorney (SBN 115453)
**TY A. FORD**, Deputy City Attorney (SBN 218365)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-7047
Fax No.:    (213) 978-8785
Email: ty.ford@lacity.org

*Attorneys for Defendants* **CITY OF LOS ANGELES and LOS ANGELES POLICE DEPARTMENT**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASMIK JASMINE CHINARYAN, Individually and as Guardian ad Litem for NEC, a Minor, and MARIANA MANUYAN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, LOS ANGLES POLICE DEPARTMENT, CHIEF OF POLICE MICHEL MOORE, SERGEANT FRED CUETO, OFFICERS ROMERO GONZALEZ, MARIO MENSES, JEFF RODD, RODRIGO SORIA, AIRAM POTTER, DANIEL MARTINEZ, DANIEL GAYTON, EDUARDO PICHE, BRITTANY OKE, and DOES 8-10,<br><br>Defendants. | **CASE NO. 2:19-cv-9302 MCS (Ex)**<br>[Assigned to Hon. Mark C. Scarsi, USDC-1st Cthse., Ctrm. 7C; Magistrate Eick, Roybal-Cthse, Ctrm. 750]<br><br>**DEFENDANTS' NOTICE OF MOTION AND *FIRST* MOTION *IN LIMINE* TO EXCLUDE EVIDENCE, STATEMENTS, SUGGESTIONS OR INFERENCES OF OTHER INCIDENTS, LAWSUITS, CLAIMS, VERDICTS, SETTLEMENTS OR JUDGMENTS INVOLVING THE CITY OF LOS ANGELES OR LOS ANGELES POLICE DEPARTMENT, INCLUDING OTHER "HIGH RISK" TRAFFIC STOPS**<br><br>**FINAL PRE-TRIAL CONFERENCE**<br>DATE:   August 9, 2021<br>CTRM:   7C<br>TIME:   2:00 p.m.<br><br>**TRIAL**<br>DATE:   August 24, 2021<br>CRTM:   7C<br>TIME:   8:30 a.m. |

**TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD HEREIN:**

1

PLEASE TAKE NOTICE THAT Defendants CITY OF LOS ANGELES, and LOS ANGELES POLICE DEPARTMENT ("Defendants"), will and hereby do move this Court, before trial and prior to jury selection, for the following order *in Limine* directing Plaintiffs and their counsel as follows:

1.      Not to testify about, mention, refer to, suggest, interrogate concerning, infer, nor to convey to the jury the existence of other incidents (including the so-called "Rampart Scandal", Consent Decree, Christopher Commission, the Rodney King incident and so-called "Code of Silence"), lawsuits, claims, verdicts, settlements, or judgments involving the City of Los Angeles, the Los Angeles Police Department or any of the former individual Defendants, including as to other "high risk" traffic stops or other "felony traffic stops";

2.      To instruct and admonish Plaintiffs and their counsel and advise said counsel to instruct all witnesses to refrain from conveying to the jury directly or indirectly, any of the facts mentioned in this Motion without first obtaining permission of the Court outside the presence and hearing of the jury;

3.      To refrain from making any reference to the fact that this Motion has been filed; and,

4.      To warn and caution each of the witnesses to strictly follow the same instructions.

This Motion is made on the grounds that evidence of or reference to other incidents, lawsuits, claims, settlements, verdicts or judgments involving any of the Defendants is irrelevant to the issues in this case, and that if these matters were brought to the attention of the jury, Defendants would be unduly prejudiced by them, and such prejudice would not be cured by any instruction to the jury.

Defendants initially met and conferred with Plaintiffs' counsel on the substance of this motion *in limine*.  Plaintiffs' counsel indicated they would oppose this motion.

///

1    This Motion also is based upon the supporting Memorandum of Points and
2    Authorities, the papers and pleadings on file in this action, and upon such further
3    matters which may be presented at or before the hearing on this Motion.

4
5    Dated:  July 19, 2020          Respectfully submitted,

6                                  **MICHAEL N. FEUER**, City Attorney
7                                  **KATHLEEN A. KENEALY**, Chief Deputy City Atty.
                                   **SCOTT MARCUS**, Senior Assistant City Attorney
8                                  **CORY M. BRENTE**, Senior Assistant City Attorney

9
10   By:  */s/ Ty A. Ford*
                                   **TY A. FORD**, Deputy City Attorney
11                                 *Attorneys for Defendants*
                                   **CITY OF LOS ANGELES and LOS ANGELES**
12                                 **POLICE DEPARTMENT**
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' PORTION OF JOINT MOTION
## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

This case arises out of an error by the California Department of Motor Vehicles (DMV). The DMV sent license plates to the husband of Plaintiff Hasmik Jasmine Chinaryan with an incorrect license plate number that did not match the vehicle registration. Plaintiff's husband put those plates on his vehicle, a black Chevrolet Suburban. As a result, when Sergeant Fred Cueto ran Chinaryan's license plate on June 16, 2019, Cueto's in-car computer showed that the plates belonged to a Dodge Ram, not a Chevrolet Suburban. Cueto knew that a black Chevrolet Suburban had been stolen in the neighborhood the night prior, and he knew that it was a common practice for car thieves to put different license plates on stolen vehicles in order to avoid police detection. Cueto also was aware that individuals who are involved in vehicle thefts are often armed and dangerous when apprehended. Cueto reasonably believed that Chinaryan's vehicle was stolen. Therefore, pursuant to his training and experience, and in accordance with LAPD policy, he requested back-up units and a police helicopter to conduct a "high-risk" stop of the vehicle.

At Sgt. Cueto's direction, Officers Meneses and Gonzalez initiated a "high risk" traffic stop of Plaintiffs' vehicle. The driver, Plaintiff Chinaryan, was "proned out" on the street, while Plaintiffs Manukyan and NEC were ordered out and walked backwards to the sidewalk. Additional Officers assisted with detaining the Plaintiffs pending investigation in handcuffs and "clearing" the vehicle. During the detention, the Officers investigated the license plate using their computer resources and ultimately discovered that the DMV had sent Plaintiff Chinaryan's husband an incorrect plate which was registered to a different individual and different vehicle. After checking the Plaintiffs for wants and warrants, they were unhandcuffed and released. The total detention time was less than 15 minutes.

Pursuant to the Court's prior orders on the parties' cross-MSJs, the only remaining claim in the instant trial is Plaintiff's claim "entity liability" (*Monell*) under 42 U.S.C. § 1983, based on a policy, practice, or longstanding custom theory. All other claims have either been stayed or resolved in Defendants' favor via motion for summary adjudication.  (See Docket #77).

Evidence of other incidents, lawsuits, settlements, claims, verdicts or judgments involving the City of Los Angeles, the Los Angeles Police Department or any of the individual former Defendants – including those involving "high risk" or "felony" traffic stops of suspected stolen vehicles –is irrelevant to this action, and its prejudicial impact on Defendants substantially outweighs any possible probative value.  Further, this case does not concern any alleged scandal involving Defendants or the Los Angeles Police Department or any reports or boards of inquiry relating thereto, including the Consent Decree, the Christopher Commission, the Rampart Board of Inquiry, the Chemerinsky Report, the Rampart Independent Review Panel Report, the Rodney King incident, the so-called Rampart Scandal, and the so-called "Code of Silence".

 In addition, in its MSJ order (Docket #77), this Court has already ruled that "Plaintiffs have both official documents and officer statements and thus do not need to provide evidence of multiple incidents" regarding their *Monell* theory of policy, custom, or longstanding practice.  *Id*.  Thus, not only is there is relevance to introduce evidence of or reference any other incidents, in particular any other "high risk" or "felony traffic stops," yet there is significant danger of undue prejudice to the Defendants if such evidence or references are allowed.  Nevertheless, the Officers will testify as to why the "high risk" or "felony traffic stop" as utilized *in this particular incident* based on *the totality of the circumstances present*, which is obviously different with each particular case.  References to or arguments about other incidents or other cases – each of which necessarily involved a different totality of the circumstances – would be misleading and unfairly prejudicial, since the jury

would have no way of knowing the totality of the circumstances in the other incidents.

Of particular concern is a somewhat similar case also handled by Plaintiffs' counsel, *Theney v. City of Los Angeles*, No. 11 CV 15-9602-AB (AFMx), 2017 WL 10743001, which did not involve any of the same Officers involved in the instant case. References or arguments regarding Theney or other "high risk" or "felony traffic stops" are irrelevant and prejudicial, and as noted, *supra*, the Court has already found that Plaintiffs need not show the existence of multiple incidents, given the evidence in the instant case.

All of the aforementioned items are irrelevant to the issue of liability. If allowed, such evidence would only serve to confuse the issues, mislead the jury, and would cause undue prejudice to Defendants. Accordingly, Defendants request that Plaintiffs, their counsel and their witnesses be prohibited from stating, maintaining, suggesting or inferring that the Los Angeles Police Department or any of the individual Defendants are or may have been involved in other incidents, lawsuits, settlements, verdicts, claims or judgments, including those involving "high risk" or "felony traffic stops."

## II.   ANY EVIDENCE OF OTHER INCIDENTS, LAWSUITS, CLAIMS, SETTLEMENTS, VERDICTS OR JUDGMENTS IS IRRELEVANT AND SHOULD BE EXCLUDED FROM TRIAL.

Defendants seek to preclude Plaintiffs, their counsel or any of their witnesses from mentioning, testifying, referring to, suggesting or inferring in any way during trial on this matter the existence of other incidents, lawsuits, similar claims, any amounts of other verdicts, settlements or judgments of other lawsuits or claims involving the City of Los Angeles, the Los Angeles Police Department or any of the individual Defendants. Such evidence is irrelevant to the subject matter of this action, as it does not prove or disprove any disputed fact of consequence in the present case. According to the Federal Rules of Evidence, the only evidence that is

admissible is evidence which proves or disproves a disputed fact of consequence. Rule 402, states in relevant part that, ". . . Evidence which is not relevant is not admissible."  "Relevant evidence" is "any evidence having any tendency to make the existence of any fact that is of consequence of the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

As it relates to the City of Los Angeles or Los Angeles Police Department and other incidents, Defendants also seek to exclude any testimony on or any evidence of any alleged scandals involving Defendants or the Los Angeles Police Department, including, but not limited to the Consent Decree, the Christopher Commission Report, The Rampart Independent Review Panel Report, the Chemerinsky Report, the Rampart Board of Inquiry, the Rodney King incident and the so-called "Code of Silence".  The Rampart incidents occurred in the late 1990s, and the Christopher Commission report was published in 1991 after the Rodney King incident.  In addition, the "Code of Silence" is a termed coined by the media.  None of these events or media-created terminology have any bearing whatsoever on this incident, which occurred in April 17, 2018, more than 20 years *after* these alleged scandals. Moreover, the Honorable Gary A. Fees also dismissed the Consent Decree in 2013.

**III.    THE PROBATIVE VALUE OF OTHER INCIDENTS, LAWSUITS, CLAIMS, SETTLEMENTS, VERDICTS OR JUDGMENTS WOULD BE SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNDUE PREJUDICE, MISLEADING THE JURY, AND CAUSING UNDUE DELAY AND WASTE OF TIME.**

Federal Rule of Evidence, Rule 403 further states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay[] [and] waste of time . . . ."  The prejudicial impact of evidence of other lawsuits, claims, settlements, verdicts, or judgments outweighs its probative value, if any, would only serve to confuse and inflame the jury, and would

1  cause an undue delay and waste of judicial resources.

2      Here, if evidence of other alleged incidents were permitted, Defendants would

3  have to bear the burden of defending themselves against not only the specific

4  allegations of Plaintiffs' action, but also against the vague, incomplete and unreliable

5  hearsay allegations contained in the other claims.  The waste of judicial time involved

6  in holding a "mini-trial" on each and every incident cannot be justified.  Further, in

7  order to minimize the prejudicial effect of other alleged claims or lawsuits,

8  Defendants would have to defend itself regarding each claim and would have to call

9  numerous witnesses to testify about matters that bear little or no relationship to the

10 instant litigation.  A number of courts, when confronted with similar evidence, have

11 found that the waste of judicial time and resources and the danger of jury confusion

12 has dictated the exclusion of such evidence.  The admission of such evidence also

13 would create the potential danger for jurors to subconsciously infer that because other

14 lawsuits or claims existed, Defendants must be liable here.

15     Similarly, the introduction of evidence of amounts of verdicts, settlements or

16 judgments would be unduly prejudicial to Defendants as the jurors may

17 subconsciously infer, even if instructed otherwise, that the monetary value of the

18 instant case is the same as in earlier verdicts, settlements or judgments.

19     Moreover, any alleged scandals involving Defendants or the Los Angeles

20 Police Department, including the Consent Decree, the Christopher Commission

21 Report, the Rampart Independent Review Panel Report, the Chemerinsky Report, the

22 Rampart Board of Inquiry, the Rodney King incident and the so-called "Code of

23 Silence", have generated considerable negative media coverage against the City of

24 Los Angeles and the Los Angeles Police Department.  The concern is that jurors in

25 this case may be influenced by the negative media coverage and that they may be

26 induced to make an emotional decision as a result of a visceral reaction to the alleged

27 scandals.  Thus, making reference to such topics during the trial in this case would be

28 unduly inflammatory and would result in extreme prejudice to Defendants.

In addition, references to the Consent Decree, the Christopher Commission Report, the Rampart Independent Review Panel Report, the Chemerinsky Report, the Rampart Board of Inquiry, the Rodney King incident, the so-called "Code of Silence" and any alleged scandals involving Defendants or the Los Angeles Police Department would only serve to confuse the issues as jurors may feel compelled to spend their time deliberating the alleged scandals and ignore the evidence relevant to this case. Such references also may cause the jury may render a decision which reflects their view of the alleged scandals in general.  Constant reference to the subject items could certainly mislead the jury and could unduly prolong the trial and waste valuable judicial resources, as Defendants would be forced to rebut such evidence, which has no correlation to the facts of this case.

## IV.   <u>CONCLUSION.</u>

For the foregoing reasons, Defendants respectfully request that the Court issue an order precluding Plaintiffs, their counsel and their witnesses from introducing any evidence of other incidents (including the Consent Decree, Christopher Commission, so-called "Rampart Scandal" and so-called "Code of Silence") lawsuits, claims, settlements, verdicts or judgments involving the City of Los Angeles, the Los Angeles Police Department or any of the individual Defendants, including those involving "high risk" or "felony traffic stops."

Dated:  July 19, 2020          Respectfully submitted,

**MICHAEL N. FEUER**, City Attorney
**KATHLEEN A. KENEALY**, Chief Deputy City Atty.
**SCOTT MARCUS**, Senior Assistant City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney

By: _/ s / Ty A. Ford_
    **TY A. FORD**, Deputy City Attorney
*Attorneys for Defendants*
**CITY OF LOS ANGELES and LOS ANGELES POLICE DEPARTMENT**

6