UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASMIK JASMINE CHINARYAN, Individually and as Guardian ad Litem for NEC, a Minor, and MARIANA MANUKYAN,<br><br>        Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES and LOS ANGELES POLICE DEPARTMENT,<br><br>        Defendants. | CASE NO.  2:19-cv-9302 MCS (Ex)<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

**1.    PARTIES AND PLEADINGS**

The parties are:

Plaintiffs: Hasmik Jasmine Chinaryan, Individually and as Guardian ad Litem for NEC, a Minor, and Mariana Manukyan

Defendants: City of Los Angeles and Los Angeles Police Department ("LAPD")

Each of these parties has been served and has appeared.  All other Defendants named in the pleadings and not identified in the preceding paragraph are now

1

dismissed or have been granted judgment in their favor through Defendants' Motion for Summary Judgment or Adjudication (See Dkt. #77).

The pleadings which raise the issues are:

Plaintiffs' First Complaint (Dkt. No. 41)

Answer by Defendants to Plaintiffs' First Amended Complaint (Dkt. No. 50)

**2.   JURISDICTION AND VENUE**

Federal jurisdiction and venue are invoked upon the following grounds: Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for violations of the rights of Plaintiffs under the United States Constitution. The Court has federal question jurisdiction over Plaintiffs' § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343.

Plaintiffs' claims are based on conduct and events that occurred within the geographical territory of the Central District of California and venue therefore lies in this district pursuant to 28 U.S.C. § 1391(b).

The facts requisite to federal jurisdiction and venue in the Central District of California are admitted.

**3.   TRIAL ESTIMATE**

The parties estimate 3 to 4 trial days.[1]

---

[1] The Court has advised the Parties that trial will last for three (3) days.

4. **JURY TRIAL**

Both sides timely demanded jury. The trial is to be a jury trial. The parties will concurrently lodge: (a) proposed jury instructions as required by Local Rule 51-1, both agreed-upon and disputed instructions, (b) proposed verdict forms; and (c) any special questions requested to be asked on voir dire.

5. **ADMITTED FACTS**
   1. The LAPD officers, while conducting the traffic stop of Plaintiffs, acted within the course and scope of their employment.
   2. The LAPD officers who conducted the traffic stop of Plaintiffs acted under color of state law.

6. **UNDISPUTED FACTS, SUBJECT TO EVIDENTIARY OBJECTIONS**
   None.

7. **CLAIMS AND DEFENSES OF THE PARTIES**

   A. **PLAINTIFFS**

   **(a)　Plaintiffs' claim:**

   Plaintiffs are pursuing only their 42 U.S.C. § 1983 claim based on entity *Monell* liability against the City and the LAPD, namely Defendants' policy, practice or custom regarding high-risk vehicle stops was the moving force that caused the deprivation of Plaintiffs' rights under the Fourth Amendment.

   **(b)　The elements required to establish Plaintiffs' claim are:**
   1. The LAPD officers acted under color of law.
   2. One or more plaintiffs was deprived of rights under the Fourth Amendment of the United States Constitution when officers exceeding the scope of an investigatory detention based on reasonable suspicion by unreasonably compelling Plaintiff Chinaryan to lie prone on the street, by unreasonably handcuffing and searching Plaintiffs, and by unreasonably pointing guns at them.

      3.    The officers acted pursuant to a policy, practice or custom of Defendants that was so closely related to the constitutional deprivation to be the moving force that caused the ultimate constitutional injuries.

*See* Ninth Circuit Model Civil Jury Instructions Nos. 9.1, 9.5, 9.12, 9.16, 9.17 9.20, 9.21, 9.22, and 9.25; *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996); *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1042-44 (9th Cir. 2014).

    **(c)**    **In Brief, the Key Evidence Plaintiff Relies On:**

    1.    The parties stipulate that the officers acted under color of state law.

    2.    Body-worn and dash camera video recordings show the deprivations of Plaintiffs' Fourth-Amendment rights in that the officers exceeded the scope of a *Terry* stop by pointing firearms at Plaintiffs, by making Plaintiff Chinaryan lie prone in the street, by handcuffing Plaintiffs and by patting Plaintiffs down for weapons.

    3.    The officers admit: 1) Plaintiffs were cooperative and took no action that raised a reasonable possibility of danger or flight; 2) The officers had no information that any Plaintiff was armed; 3) The stop did not closely follow a violent crime; and 4) the officers had no information that a crime that may involve violence was about to occur.

    4.    The Court has adjudicated that City policy was the moving force in the interaction between the officers and Plaintiffs.

    **B.**    **DEFENDANTS**

        **(a)**    **Defendants' claims and defenses:**

Defendants agree that Plaintiffs are pursuing only their 42 U.S.C. § 1983 claim based on entity *Monell* liability against the City and the LAPD, namely Defendants' policy, practice or longstanding custom. However, Defendants contend that their police officers' actions were not based on a policy, practice, or procedure, but rather based on the totality of the circumstances specific to *this particular incident*. Defendants also contend that Plaintiffs must prove that the proning-out of Plaintiff

Chinaryan, the drawing of firearms, and the circumstances of Plaintiffs detention were *unreasonable*.

**(b) The elements required to establish Plaintiffs' claim are:**

*First,* Plaintiffs must prove an underlying constitutional violation by an individual officer.

1. The Defendants' officers seized the plaintiff's person;
2. in seizing the plaintiff's person, the Defendant Officers acted intentionally; and
3. the seizure was unreasonable.

Then, *if and only if the Plaintiffs have proven that an individual officer violated the Plainitffs' constitutional rights*, should they determine whether there was a *Monell* violation, to wit:

1. The officers acted under color of state law;
2. The acts of the officers deprived the plaintiffs of their particular rights under the laws of the United States and/or the United States Constitution as explained in the following instructions;
3. The officers acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of Defendants City and Los Angeles Police Department; and
4. The Defendants' official policy or widespread or longstanding practice or custom caused the deprivation of the plaintiffs' rights by the officers; that is, the Los Angeles Police Department's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiffs' rights as to be the moving force that caused the ultimate injury

*See* Ninth Circuit Model Civil Jury Instructions Nos. 9.20, 9.21 and 9.25.

**(c)   In Brief, the Key Evidence Defendants Rely On:**

1. The totality of the circumstances in this particular case, including the prior report of a stolen vehicle in the vicinity, which matched the description of the Plaintiffs' vehicle, the prior evening LoJack hit near the location Plaintiffs' vehicle

was observed driving, and the MDC information that showed that the license plate did not belong to a Chevrolet Suburban, but rather to a Dodge Ram truck.

    2. The officers' prior training and experience involving the inherent dangers of pulling over a suspected stolen vehicle – a felony crime – and their LAPD and POST training, which allow for "high risk" vehicle stops including the use of unholstered or drawn firearms at the ready, and the "proning-out" of suspects pending investigation.

    3. The fact that the firearms were never pointed at the bodies of the Plaintiffs, but rather held at a "low ready" position.

    4. The fact that the "search" of Plaintiffs for weapons was brief and lawful, and that Plaintiff Chinaryan provided implied consent to retrieve her purse for identification purposes.

    **AFFIRMATIVE DEFENSE 10:**

        **(a) Tenth Affirmative Defense:** *Entity Immunity re: Punitive Damages*

        **(b) Elements and Summary of Key Evidence:**

            Defendant City of Los Angeles and all Defendants sued in their official capacities are immune from the imposition of punitive damages. Based on the parties' meet-and-confer, this affirmative defense is not in dispute as to the sole surviving *Monell* claim.

**8. ISSUES TO BE TRIED**

In view of the elements required to establish the claims, the following issues remain to be tried:

<u>Plaintiffs' Statement of Issues:</u>

Whether the City's policy, practice or custom authorizing high-risk vehicle stop procedures, including forcing people to lie prone in the street, pointing firearms, handcuffing and searching them for weapons while determining whether a vehicle is stolen violated the Fourth Amendment where: 1) Plaintiffs were cooperative and took no action that raised a reasonable possibility of danger or flight; 2) The officers had

no information that any Plaintiff was armed; 3) The stop did not closely follow a violent crime; and 4) the officers had no information that a crime that may involve violence was about to occur.

Defendants' Statement of Issues:

1. Whether any individual police officers of Defendants City of Los Angeles and LAPD violated Plaintiffs' constitutional rights, and, if so:

2. Whether the Defendants' employee(s) violated Plaintiffs' Fourth Amendment rights due to a policy, custom, or longstanding practice of Defendants City of Los Angeles and LAPD.

## 9. DISCOVERY

Fact discovery is complete. However, due to the COVID-19 and related calendar congestion, the expert depositions have yet to be taken: Plaintiffs' police practices expert Jeffery Noble and Defendants' police practices expert Ed Flosi. The parties intend to complete these depositions before trial.

## 10. RULE 26(a)(3) DISCLOSURES: EXHIBITS

The joint exhibit list of the parties has been filed under separate cover as required by Local Rule 16-6.1 (Dkt. No. 85).

## 11. WITNESSES AND DEPOSITION DESIGNATIONS

Witness lists of the parties have been filed with the Court as required by Local Rule 16-5 (Dkt. Nos. 81, 84). Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Witness LAPD Sgt. Fred Cueto passed away in December 2020. The parties intend to read designated passages from his deposition pursuant to Fed. R. Civ. P. 32(a)(4)(A). The parties agree that the jury should not be told why Sgt. Cueto is unavailable to testify in person. The parties are meeting and conferring to identify passages to be read to the jury, and to resolve the manner in which the reading should take place. Unresolved objections to testimony offered by one party, if any, will be provided to the Court in a joint document.

## 12. LAW AND MOTION MATTERS

Defendants filed one motion *in limine* on July 19, 2021 (Dkt. #82). Plaintiffs filed a brief opposition, contending that the motion violates the Court order that "Motions in limine should address specific issues."

## 13. BIFURCATION / SEVERANCE OF ISSUES

Defendants request bifurcation that the jury first find a constitutional deprivation, and if so, proceed to a finding of whether there was a *Monell* violation.

Plaintiffs oppose bifurcation.

<u>Plaintiffs' statement regarding bifurcation:</u>

Defendants have not brought a motion to bifurcate. There is nothing to bifurcate. There are no police officer, individual defendants. There is a *Monell* claim against the entities and, if the jury finds a constitutional deprivation occurred, it must determine compensatory or nominal damages. The entities are immune from punitive damages.

Constitutional deprivations sometimes occur "not . . . as a result of actions of the individual officers, but as a result of the collective inaction" of the entity. *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989), for the proposition that a "city could be held independently liable under § 1983 for failure to train its police officers even though no individual defendants were sued"). Accordingly, once "a plaintiff establishes he suffered a constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under § 1983," *id.* & n.4, a common-sense rule dating back thirty years. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992) ("city might be held liable for improper training or improper procedure even if [officer] is exonerated"); *accord Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1142-43 (9th Cir. 2012) (*Fairley* "made clear that the rule applies 'whether the officers are exonerated on the basis of qualified immunity, because they were merely negligent, or for other failure of proof.'"); *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th

Cir. 2019) (jury could determine plaintiff "suffered a constitutional deprivation as a result . . . of officers' adherence to departmental customs or practices.")

   Other circuits follow the same rule. According to the Tenth Circuit:

> [S]ometimes the municipal policy devolves responsibility across multiple officers. In those situations, the policies may be unconstitutional precisely because they fail to ensure that any single officer is positioned to prevent the constitutional violation. Where the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the municipality may be directly liable. That is, the municipality may not escape liability by acting through twenty hands rather than two.

*Crowson v. Washington Cty.*, 983 F.3d 1191, 1166 (10th Cir. 2020) (citing *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 310 (10th Cir.1985)); *accord*, *Barnett v. MacArthur*, 956 F.3d 1291, 1301-02 (11th Cir. 2020) ("[M]unicipal liability can exist if a jury finds that a constitutional injury is due to a municipal policy, custom, or practice, but also finds that no officer is individually liable for the violation. . . . This is not a controversial concept, as many of our sister circuits have come to the same conclusion."); *Speer v. City of Wynne*, 276 F.3d 980, 985-86 (8th Cir. 2002) ("[S]ituations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation."); *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994) (en banc) ("[A]n underlying constitutional tort can still exist even if no individual police officer violated the Constitution."); *Barrett v. Orange Cty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ("We agree with our sister circuits that under *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability."); *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293,

305 (7th Cir. 2010) ("[A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict.").

On these grounds Plaintiffs oppose bifurcation.

<u>Defendants' statement regarding bifurcation:</u>

Defendants contend that the jury must *first* find that an individual employee of the Defendant entity violated the Plaintiffs' constitutional rights *before* it can find the entity Defendants liable.  Even though the Court has already determined that, if such a theoretical constitutional violation has occurred, then the City's policy, practice, or custom is the "moving force" behind such a theoretical violation, the jury must still first decide if any such violation has occurred at all.  Thus, in this highly unusual circumstance, the trial should be bifurcated to (1) find whether or not any *individual* violated the Plaintiffs constitutional rights, and then, *if and only if such a finding is made*, (2) hear and determine what damages, if any, to award.

**14.   The foregoing admissions having been made by the Parties, and the Parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.**

**IT IS SO ORDERED**.

Dated: <u>September 21, 2021</u>

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　MARK C. SCARSI
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE